___ FILED ___ ENTERED
___ LODGED ___ RECEIVED

JAN 17 2015

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY_____DEPUTY

Magistrate Judge Theiler

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

Plaintiff

v.

BRIAN RICHARD FARRELL,

Defendants.

NO. MJ 15-16

COMPLAINT FOR VIOLATION

Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C), 846

BEFORE, Mary Alice Theiler, Chief United States Magistrate Judge, U. S. Courthouse, Seattle, Washington.

The undersigned complainant being duly sworn states:

## COUNT 1
**(Conspiracy to Distribute Cocaine, Heroin, and Methamphetamine)**

Beginning at a time unknown, but within the last five years, and ending on or about September 2014, in Bellevue, within the Western District of Washington, and elsewhere, BRIAN RICHARD FARRELL, and others known and unknown, knowingly and intentionally did conspire to distribute heroin, a substance controlled under Schedule I, Title 21, United States Code, Section 812, and cocaine and methamphetamine, substances controlled under Schedule II, Title 21, United States Code, Section 812.

COMPLAINT/FARRELL - 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

It is further alleged that this offense involved one kilogram or more of a mixture or substance containing heroin, 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, and 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine.

All in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), and 846.

The undersigned complainant, Michael Larson, being duly sworn, further deposes and states as follows:

## INTRODUCTION

1. I am a Special Agent with the Department of Homeland Security (DHS), U.S. Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), assigned to the Office of the Special Agent in Charge, Seattle, Washington. I have been employed as an HSI Special Agent since July 2009 and I am currently assigned to the Border Enforcement Security Task Force (BEST). I am a graduate of the Federal Law Enforcement Training Center's Criminal Investigator Training Program in Brunswick, Georgia, as well as the ICE Special Agent Training Program. I am also a graduate of Michigan State University in East Lansing, Michigan, where I received Bachelor's degrees in International Relations and Criminal Justice from James Madison College and the School of Criminal Justice, respectively. Prior to my employment with HSI, I worked for the United States District Court for the Western District of Michigan and Western District of Washington for eleven years as a United States Probation Officer and United States Probation Officer Assistant.

2. During my career, I have participated in investigations and search warrants involving theft, fraud, money laundering, smuggling, import and export violations, counterfeit goods, crimes against persons, and drug trafficking. Because of my training and experience, I am familiar with common methods of drug smuggling and trafficking. I have participated in numerous drug smuggling and trafficking investigations and search

warrants involving the use of computers and the internet, and have assisted in the gathering of evidence during execution of those warrants.

3. The facts set forth in this Affidavit are based on my own personal knowledge; information obtained from other individuals during my participation in this investigation, including other law enforcement officers; interviews of cooperating witnesses; review of documents and records related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; and information gained through my training and experience.

4. Because this Affidavit is submitted for the limited purpose of establishing probable cause in support of a criminal complaint, it does not set forth each and every fact that I, or others, have learned during the course of this investigation.

## SUMMARY OF PROBABLE CAUSE

### A.   The Silk Road and Silk Road 2.0

5. According to law enforcement papers that I have reviewed, the Silk Road was an online black market that offered various illegal items for sale, including narcotics. The Silk Road operated on the "The Onion Router" (the "TOR") network, which is a special network of computers distributed around the world designed to conceal the true Internet Protocol ("IP") addresses of the users on the network. Every communication sent through TOR is bounced through numerous relays within the network and wrapped in a layer of encryption at each relay, such that the end recipient of the communication has no way of tracing the communication back to its true originating IP address. TOR also enables web sites to operate on the network in a manner that conceals the true IP address of the computer server hosting the website.

6. In October 2013, law enforcement arrested the head of the Silk Road, Ross Ulbricht, who operated under the name "Dread Pirate Roberts." The government also seized the Silk Road website.

7. Later that year, in the wake of these developments, Silk Road 2.0 ("SR2") was launched. SR2 also operated on the TOR network, and the appearance of the site was virtually identical to that of the Silk Road. SR2 contained a user-friendly interface with links to various categories of items for sale on the site, including drugs such as MDMA (Ecstasy), LSD, cannabis, hashish, methamphetamine, cocaine and heroin. The site offered illegal items aside from drugs, including weapons, fake identification cards, drug paraphernalia, counterfeit merchandise, stolen identity/credit cards, and malicious software and computer equipment.

8. If a user clicked on any particular item for sale, the website would display the details of the listing, including a description of the item, the price, the username of the vendor selling the item, and prior customers' feedback on the vendor. To buy an item, the user would click a link labeled "add to cart." The user was then prompted to supply a shipping address and to confirm the placement of the order.

9. Users paid for items on SR2 using Bitcoins. Bitcoins are a virtually untraceable, decentralized, peer-to-peer form of electronic digital currency having no association with banks or governments. In order to pay for an item, a user would first obtain Bitcoins (typically from a Bitcoin exchanger) and then transfer them to the user's SR2 account. After completing the sale, the vendor's SR2 account would be credited the amount of the sale, and the user's account would be debited accordingly. SR2 would charge a commission on the sale, which at times ranged from four to eight percent. Vendors were allowed to anonymously transfer their Bitcoin proceeds from their SR2 accounts to accounts not associated with the site.

10. In November 2014, law enforcement arrested the head of SR2, Blake Benthall, who operated under the name "Defcon." The SR2 website was also seized.

B.     **Farrell's Participation in SR2**

11.    I have spoken with a law enforcement agent who accessed SR2 over an extended period of time. SR2 had a portion of its site that was open only to vendors. Between January 2014 and July 2014, a source of information provided law enforcement with particular IP addresses that had accessed the vendor portion of SR2. A user could not accidentally end up on the vendor portion of SR2. Rather, SR2 administrators/moderators restricted access to the vendor portion of the site to vendors who had conducted a certain amount of transactions. In addition, a user required a username and a password to access the vendor portion of SR2.

12.    On July 30, 2014, HSI Seattle received a lead regarding one of these IP addresses, 67.182.142.24. According to Comcast records, the IP address resolved to an account maintained by a cooperating witness ("CW1") at 4238 163rd Avenue SE, Bellevue, Washington 98006. Washington Department of Licensing records showed that two individuals maintained vehicles at that address, CW1 and BRIAN FARRELL. Over the next few months, agents observed multiple vehicles at the residence, including one belonging to FARRELL. Agents also observed FARRELL on one occasion outside the residence.

13.    On December 22, 2014, law enforcement approached both CW1 and FARRELL at the Bellevue residence. FARRELL said that he was familiar with Silk Road from the news, and said that he had visited the site within the last six months. FARRELL said, "I deal with bitcoins," further stating that Silk Road was the "shady side of bitcoins." FARRELL denied ever buying or selling drugs on the Silk Road, stating that to the best of his knowledge no one living with him was involved in buying or selling drugs. FARRELL said that his roommate was CW1, and said that the two of them had a shared Comcast account.

14.    CW1 said that he had rented a room at the Bellevue residence since 2008. CW1 said that several people had lived at the residence over time, but that currently

COMPLAINT/FARRELL - 5

FARRELL was the only other person to live there. CW1 stated that FARRELL was a "computer wizard," and had made a number of upgrades to the computer network in the house. CW1 said that FARRELL had a computer server in the garage. CW1 said that he/she had learned about Silk Road and the "dark net" from FARRELL. CW1 said that FARRELL had showed him/her the Silk Road website, which was full of drugs for sale. According to CW1, FARRELL said that he could get "anything" off the website. CW1 also said that FARRELL bragged about being a hacker.

15. According to CW1, FARRELL received packages on a daily basis from UPS, FedEx, and USPS. FARRELL also "obsessively" tracked his packages online and "babysat" the mailbox. CW1 said that on one occasion CW1 had opened a suspicious package addressed to FARRELL and found it to contain a bag of Xanax pills. When asked about what he did about the pills, CW1 stated that he/she held onto them.

16. On December 23, 2014, CW1 voluntarily surrendered the package to law enforcement. It contained 107 Xanax pills.

17. On January 2, 2015, agents executed a search warrant at the Bellevue residence. During the course of the search, agents seized various computer media, various prescription medications, drug paraphernalia, silver bullion bars valued at $3,900.00, and approximately $35,000 in U.S. currency.

18. On the day of the search, FARRELL was interviewed after being provided *Miranda* warnings. Initially, FARRELL maintained that he did not really know much about SR2. FARRELL stated he heard about the Silk Road from the news and had been on the website one time in the past. He said he had done some research on the site after his first interview with law enforcement about the topic.

19. Agents confronted FARRELL with the fact that an IP address tied to the residence was tied to SR2. FARRELL stated many people had come and gone from the house and there had been a lot of past users of the internet in the residence. FARRELL stated he registered with SR2 with a username to allow him to look around the site.

20. Agents asked FARRELL whether he would help identify others involved in SR2. FARRELL stated, "You're not going to find much of a bigger fish than me." He continued by saying, "My moniker on Silk Road was "DoctorClu". Agents asked FARRELL what he did as "DoctorClu," and he said he was the support manager and worked as "Defcon's" right hand man. As mentioned above, "Defcon," *i.e.*, Blake Benthall, was the chief operator of SR2.

21. FARRELL said that he had lead a "denial-of-service-attack" on the TOR Market, a competitor to SR2. He said that after the attack, at the end of 2013, he was offered a position on the SR2 staff. He said that he had been given a starting salary of about $750.00 per week that later climbed to about $1,750.00 per week. FARRELL said he did not have complete access to SR2, but that he could change passwords on the site. He said he served mainly as "Defcon's" spokesman. FARRELL said that other SR2 staff would obtain his permission to do things if they were unable to get a hold of "Defcon."

22. I have reviewed screen shots of SR2 activity that were captured by law enforcement. The screen shots that I reviewed include ones pertaining to communications by "DoctorClu," *i.e.*, the moniker that FARRELL admitted to using. The screen shots show FARRELL communicating with others in SR2 forums that could only be accessed by SR2 administrators and moderators.

23. Examples of screen shots that I reviewed include:

24. On December 23, 2013, "DoctorClu" was communicating with "Defcon" regarding the promotion of a SR2 member to the site's staff. "DoctorClu" stated "promotions abound today." His title was listed as "Global Moderator," which indicates his position with Silk Road 2.

25. On January 14, 2014, "DoctorClu" and "Defcon" discussed new interface options for the site. "DoctorClu" also offered to help with the new "Support Rollout" for SR2 staff members.

26. On April 29, 2014, a SR2 staff member posted a message indicating that he and "Clu" had interviewed candidates for a staff position. The screen shots include communication between the staff member and "DoctorClu" about a particular candidate.

27. On May 1, 2014, "DoctorClu" posted a message on SR2 approving a particular vendor for the site.

28. On May 30 and 31, 2014, "DoctorClu" posted messages pertaining to a "denial of service attack" on SR2.

C.  **Scope of Drug Sales on SR2**

29. I have reviewed screen shots documenting SR2 sales, and spoken with law enforcement agents who have accessed SR2's site. During the time period that FARRELL was a staff member of SR2, there were sales of drugs far exceeding the mandatory minimums specified in section 841(b)(1)(A) of Title 21. Specifically, there were sales far exceeding 1 kilogram of a mixture of substance containing heroin, 5 kilograms of a mixture or substance containing cocaine, and 500 grams of a mixture or substance containing methamphetamine.

**CONCLUSION**

30. Based on the foregoing, I submit that there is probable cause to believe that BRIAN FARRELL conspired to distribute cocaine, heroin, and methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A), and 846.

_____
Michael Larson, Complainant
Special Agent, ICE, HSI

Based on the Complaint and Affidavit sworn to before me, and subscribed in my presence, the Court hereby finds that there is probable cause to believe that the Defendant committed the offense set forth in the Complaint.

Dated this __17__ day of January, 2015.

_____
THE HONORABLE Mary Alice Theiler
United States Magistrate Judge

COMPLAINT/FARRELL - 9