The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BRIAN FARRELL,<br><br>Defendant. | No. CR15-029RAJ<br><br>**UNITED STATES' RESPONSE TO DEFENDANT FOR REDUCTION IN SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)** |

## I. INTRODUCTION

The United States of America, by Tessa M. Gorman, Acting United States Attorney for the Western District of Washington and Thomas M. Woods, Assistant United States Attorney for said district, files this memorandum in response to Defendant Brian Farrell's motion for a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). In summary, Farrell claims that FCI Sheridan mishandled his care after he became ill in March 2020, and that he continues to suffer from heart and lung problems. However, on April 7, 2021, Farrell was examined, and found not to suffer from any acute cardiopulmonary disease, and that his lungs were clear. He also has received both doses of Moderna's COVID-19 vaccine. Thus, there is no evidence that Farrell currently suffers from any serious medical



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

issues, or that his health and safety is endangered. Accordingly, his motion should be denied.

## II. FACTUAL BACKGROUND

### A. The Offense Conduct and Farrell's Guilty Plea and Sentence.

The Silk Road was an online black market that offered various illegal items for sale, including drugs. The Silk Road operated on the "The Onion Router" (the "Tor") network, which is a special network of computers distributed around the world designed to conceal the true Internet Protocol ("IP") addresses of the users on the network. Tor also enables web sites to operate on the network in a manner that conceals the true IP address of the computer server hosting the website.

In October 2013, law enforcement arrested the head of the Silk Road, Ross Ulbricht, who operated under the name "Dread Pirate Roberts." The government also seized the Silk Road website. Later that year, in the wake of these developments, Silk Road 2.0 ("SR2") was launched. SR2, like the original Silk Road, contained a user-friendly interface with links to various categories of items for sale on the site, including drugs such as MDMA (Ecstasy), LSD, cannabis, hashish, methamphetamine, cocaine, and heroin. The site offered other contraband for sale, including stolen property and malicious software and computer equipment.

If a user clicked on any particular item for sale, the website would display the details of the listing, including a description of the item, the price, the username of the vendor selling the item, and prior customers' feedback on the vendor. To buy an item, the user would click a link labeled "add to cart." The user was then prompted to supply a shipping address and to confirm the placement of the order.

In July 2014, Seattle agents received a lead that a particular IP address had accessed the vendor portion of SR2. A user could not accidentally end up on the vendor portion of SR2. Rather, SR2 administrators/moderators restricted access to the vendor portion of the site to vendors who had conducted a certain amount of transactions. In addition, a separate username and password were required to access the vendor portion of SR2.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

According to Comcast records, the IP address resolved to Farrell's address. On December 22, 2014, law enforcement contacted Farrell at the residence. Farrell said that he was familiar with Silk Road from the news, and said that he had visited the site within the last six months. Farrell said, "I deal with bitcoins," further stating that Silk Road was the "shady side of bitcoins." Farrell denied ever buying or selling drugs on the Silk Road, further stating that to the best of his knowledge no one living with him was involved in buying or selling drugs.

On January 2, 2015, agents, after receiving additional information from a cooperating witness that Farrell was involved in SR2, executed a search warrant at Farrell's Bellevue residence. During the course of the search, agents seized three handguns, various computer media, various prescription medications, drug paraphernalia, silver bullion bars valued at $3,900.00, and approximately $35,000 in U.S. currency.

On the day of the search, Farrell was interviewed after being provided *Miranda* warnings. Initially, Farrell maintained that he did not really know much about SR2. Agents then confronted Farrell with the fact that an IP address tied to the residence was tied to SR2. Farrell stated many people had come and gone from the house and there had been a lot of past users of the internet in the residence. Farrell stated he had registered with SR2 with a username to allow him to look around the site.

Agents asked Farrell whether he would help identify others involved in SR2. Farrell stated, "You're not going to find much of a bigger fish than me." He continued by saying, "My moniker on Silk Road was "DoctorClu." Agents asked Farrell what he did as "DoctorClu," and he said he was the support manager and worked as "Defcon's" right hand man. "Defcon," was the moniker used by Blake Benthall, the chief operator of SR2.

Farrell said that he had lead a "denial-of-service-attack" on the Tor Market, a competitor to SR2. He said that after the attack, at the end of 2013, he was offered a staff position on SR2. He said that he had been given a starting salary of about $750.00 per week that later climbed to about $1,750.00 per week. Farrell said he did not have complete access to SR2, but that he could change passwords on the site. He said he served mainly



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

as "Defcon's" spokesman. Farrell said that other SR2 staff would obtain his permission to do things if they were unable to get a hold of "Defcon."

Farrell was arrested and charged with conspiring to distribute controlled substance, in violation of Title 18, United States Code, Section 841(a) and 841(b)(1)(A). On March 11, 2016, Farrell pleaded guilty to the same offense at the Section (b)(1)(B) level. On June 3, 2016, the Court sentenced Farrell to 96 months of imprisonment. The Court allowed Farrell to self-report. However, on July 5, 2016, Pretrial Services obtained a warrant after Farrell was caught stealing Vicodin from his mother and brother. He also had consumed alcohol, in violation of his bond. On July 8, 2016, Farrell was arrested. He admitted the violations, and was remanded to begin serving his sentence. He currently is scheduled to be released on April 22, 2022.

**B. Farrell's Medical Status**

On March 11, 2020, Farrell reported shortness of breath, nausea, light headedness, and chills, and was transferred to an outside doctor for evaluation. *See* Exhibit A at 4. He was allowed to return to the jail the same day. *Id.* On March 12, 2020, he reported "feeling better," stating that his symptoms "just feel like a common cold." *Id.* He denied shortness of breath and stated that his cough was coming from a throat irritation, as opposed to his lungs. *Id.* He was seen the following day, at which point he denied "any symptoms including fever, cough, sore throat, or shortness of breath." *Id.* at 1. He tested negative that day for COVID-19. *See* Exhibit B at 43.[1]

In July 2020, Farrell complained that he could not get a full breath, and that he had an intermittent cough and occasional heart palpitations. *See* Exhibit B at 17. He claimed that these symptoms had been ongoing since March 2020. *Id.* Farrell was examined by an EMT paramedic, and found to have a normal heartbeat and pulse and no evidence of respiratory distress. *Id.* at 18. Farrell was told to return immediately if his condition

[1] Farrell has tested negative for COVID-19 at various other times during his incarceration.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

worsened, and to follow-up with his normal provider. *Id.* A doctor endorsed this plan by co-signing the paramedic's note. *Id.* at 19.

On August 10, 2020, Farrell was examined by a doctor. *See id.* at 14. Farrell reported feeling "a brief pause in heart beat" followed by a "heavy beat." *Id.* He said his symptoms had worsened over the course of the previous three months. *Id.* He reported feeling fatigued and having "brief episodes of shortness of breath" since he became sick in March 2020. *Id.* He was found to have a systolic murmur on the left side of his chest. *Id.* at 16. His doctor prescribed him different medications for the murmur and his claimed shortness of breath. *Id.* at 15. He also was referred for a echocardiogram. *Id.* at 16. Farrell does not appear to have had such a test. However, on April 7, 2021, a radiologist reviewed images of Farrell's chest. *See* Exhibit C at 20. The radiologist found no signs of "acute cardiopulmonary disease" and that his heart size was "within normal limits." *Id.* The radiologist also reported that Farrell's lungs were "clear." *Id.*

On March 22, 2021, Farrell received his second dose of the COVID-19 vaccine, and therefore is fully vaccinated. *See* Exhibit C at 16.

## III. ARGUMENT AND AUTHORITY

### A. The Legal Standards for Compassionate Release

"'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 825 (2010). Consistent with that principle, 18 U.S.C. § 3582(c)(1)(A) provides a court with jurisdiction to reduce an otherwise final sentence where three requirements are met: (1) the exhaustion requirements in the statute have been satisfied; (2) an extraordinary and compelling reason supports the motion; and (3) any reduction is consistent with the applicable policy statement. 18 U.S.C. § 3582(c)(1)(A). A court may then reduce a sentence if it finds a reduction appropriate after consideration of the factors in 18 U.S.C. § 3553(a).

The referenced policy statement adopted as directed by 28 U.S.C. § 994(t) and found at USSG § 1B1.13, directs that in addition to an "extraordinary and compelling



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

reason" supporting the reduction, a court must find (1) that the defendant does not present a danger to others and the community, and (2) that the reduction be appropriate after considering the factors in 18 U.S.C. § 3553(a). The application notes then provide that "extraordinary and compelling" reasons exist under the following circumstances:

> (A) Medical Condition of the Defendant.—
>
> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is—
>
> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

USSG § 1B1.13 cmt. n.1. The application notes further state that "[t]he court is in a unique position to determine whether the circumstances warrant a reduction (and, if so, the amount of reduction), after considering the factors set forth in 18 U.S.C. § 3553(a) and the criteria set forth in this policy statement, such as the defendant's medical condition, the defendant's family circumstances, and whether the defendant is a danger to the safety of any other person or to the community." USSG § 1B1.13 cmt. n.4.

Based on the statutory text, and the Supreme Court's decision *Dillon v. United States*, 560 U.S. 817, 827 (2010), addressing policy statement referenced in the parallel provision found in § 3582(c)(2), the government has taken the position that the policy statement referenced in § 3582(c)(1)(A) should control this Court's analysis. This Court has already concluded otherwise and the Ninth Circuit has recently held to the contrary.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

*See United States v. Aruda*, _ F.3d _, 2021 WL 1307884 (9th Cir. 2021). In *Aruda*, the Court held that USSG § 1B1.13 applies only to motions filed by the Director of the Bureau of Prisons and not to motions pursuant to 18 U.S.C. § 3582(c)(1)(A) filed by a defendant because the Sentencing Commission had not yet issued a policy statement applicable to such motions after the First Step Act. *Id.* at *4. The *Aruda* Court expressed agreement with the same conclusion reached in *United States v. McGee*, _F.3d _, 2021 WL 1168980 at *12 (10th Cir. Mar. 29, 2021); *United States v. McCoy*, 981 F.3d 271, 281–84 (4th Cir. 2020); *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020); *United States v. Jones*, 980 F.3d 1098, 1109 (6th Cir. 2020); *United States v. Brooker*, 976 F.3d 228, 234–37 (2d Cir. 2020). Nevertheless, the Court also observed that "[t]he Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *Aruda*, 2021 WL 1307884 at *4, citing *Gunn*, 980 F.3d at 1180.

Therefore, applying the statutory requirements, to be eligible for a reduction in sentence, a defendant must first meet the exhaustion requirements, and then present an "extraordinary and compelling" reason consistent with the policy statement. If those standards are met, this Court must then consider whether a reduction is appropriate after consideration of the factors in 18 U.S.C. § 3553(a). Consideration of the danger that defendant may continue to present to others and the community is a factor that is only directly referenced in USSG 1B1.13, and after the *Aruda*, is no longer a finding that the Court must make. Nonetheless, danger is relevant to the question of whether a sentence reduction is warranted since the factors in § 3553(a) include the need "to protect the public from further crimes of the defendant. . . ." 18 U.S.C. § 3553(a)(2)(C). Applying these standards, a sentence reduction is not appropriate in this case.



UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970

**B. Farrell Has Not Established Extraordinary and Compelling Reasons for Release.**

***1. The Exhaustion Requirement***

As the proponent of the motion, to qualify for a reduction in sentence, the defendant bears the burden of showing he satisfied the exhaustion requirement. *See United States v. Van Sickle*, 2020 WL 2219496, at *3 (W.D. Wash. May 7, 2020) (citing cases). Farrell has indeed exhausted his remedies. On January 26, 2021, the Warden denied his request for compassionate release.

***2. Farrell Has Not Shown an "Extraordinary and Compelling Reason" for His Release.***

After satisfying the exhaustion requirement, to be eligible for a district court's discretionary consideration of a reduced sentence under this provision, a defendant bears the burden to show "extraordinary and compelling reasons" that meet the high bar set by Congress and the Sentencing Commission for compassionate release to be granted. *See Riley v. United States*, 2020 WL 1819838 at *7 (W.D. Wash. Apr. 10, 2020). "In general, chronic conditions that can be managed in prison are not a sufficient basis for compassionate release." *United States v. Ayon-Nunez*, 2020 WL 704785, at *2–3 (E.D. Cal. Feb. 12, 2020). Rather, "compassionate release . . . is an extraordinary and rare event." *United States v. Mangarella*, 2020 WL 1291835, at *2–3 (W.D.N.C. Mar. 16, 2020). This reluctance to view compassionate release too expansively is grounded in a concern that it could yield significant sentencing disparities. *United States v. Ebbers*, 432 F.Supp.3d 421, 430 (S.D.NY. Jan. 8, 2020). Compassionate release is not a tool to "correct" a judgment. *Id.*

In this case, Farrell has not presented extraordinary and compelling reasons justifying release. It is not even clear that Farrell is ill, let alone that his illness is so severe that release is necessary. The latest scan of his heart and his lungs—conducted in April 2021—revealed no heart or lung issues. Moreover, although Farrell has complained about heart palpitations and shortness of breath, he appears to have functioned just fine while in prison, and has required no serious care. Farrell complains that a doctor should have



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

evaluated him sooner in the summer of 2020, and that he should have received the echocardiogram that was recommended in August 2020. Even if these complaints have merit, they fall far short of constituting "extraordinary and compelling" reasons justifying a reduction in his sentence. Farrell has administrative remedies he can pursue within the BOP system if he feels he is not receiving adequate care—none of which he has pursued to date.

Moreover, although Farrell's concerns are not focused on COVID-19, the government notes that Farrell is now fully vaccinated against the disease. Indeed, as of the date of this filing, up to forty-two percent of inmates at FCI Sheridan are now fully vaccinated. In sum, Farrell has now met the threshold showing necessary to justify release.

**C. The Seriousness of the Offense and the Defendant's Role.**

If this Court nonetheless concludes that the defendant's claims meet that standard, before granting his motion, this Court must first determine whether a reduction is warranted applying the factors in 18 U.S.C. § 3553(a), including as a factor whether the defendant continues to present a danger to the community. Further, compassionate release can yield significant sentencing disparities which would be contrary to the application of those factors. *United States v. Ebbers*, 432 F.Supp.3d 421, 430 (S.D.NY. Jan. 8, 2020). Applying these factors, release is not warranted here.

Farrell's criminal conduct was very serious. He was a senior administrator of a sophisticated dark web operation that distributed drugs worldwide. He used his technical expertise to help operate and maintain the site, and also to launch an attack on a competitor. Moreover, Farrell proved untrustworthy while on release. After the Court allowed him to self-surrender, Farrell stole drugs from his family members, and consumed alcohol, leading the Court to revoke his bond, and order that he start serving his sentence immediately.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## IV. CONCLUSION

For the foregoing reasons, the government respectfully submits this motion should be denied.

DATED this 19th day of April, 2021.

Respectfully submitted,

TESSA M. GORMAN
Acting United States Attorney

*<u>/s/ Thomas M. Woods</u>*

THOMAS M. WOODS
Assistant United States Attorney
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101
Telephone: (206) 553-7970
Email: Thomas.Woods2@usdoj.gov