The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> BRIAN RICHARD FARRELL, <br><br> Defendant. | NO. 2:15-cr-00029-RAJ <br><br> ORDER ON DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE |

This matter comes before the Court on Defendant Brian Richard Farrell's motion for compassionate release. Dkt. 89. Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby **GRANTS** the motion for the reasons explained herein.

**I. BACKGROUND**

Mr. Farrell is a 32-year-old inmate currently detained at Federal Correctional Institution Sheridan camp, with a projected release date of April 22, 2022. On March 11, 2016, he pled guilty to one count of Conspiracy to Distribute Heroin, Methamphetamine and Cocaine, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B), and 846. Dkt. 61. On June 3, 2016, Mr. Farrell was sentenced by this Court to 96 months of imprisonment, to be followed by four years of supervised release. Dkt. 74.

Mr. Farrell has now filed a motion for compassionate release arguing that he presents extraordinary and compelling reasons for the Court to reduce his sentence to time served and release him immediately to begin his four-year term of supervised release. Dkt. 89.

## II. DISCUSSION

### A. Legal Standard for Compassionate Release

A federal court generally "may not modify a term of imprisonment once it has been imposed. *Dillon v. United States*, 560 U.S. 817, 819 (2010) (quoting 18 U.S.C. § 3582(c).

Under 18 U.S.C. § 3582(c)(1)(A), Congress provided an exception allowing a court to reduce a term of imprisonment for "extraordinary and compelling reasons." While under the original statute, only the BOP Director could file such a motion, that limitation has been revised. As part of the First Step Act of 2018, Congress amended § 3582(c)(1)(A) to allow a defendant to seek a reduction from the BOP and that request has been denied or 30 days have passed.

Congress failed to provide a statutory definition of "extraordinary and compelling reasons." Instead, Congress stated that the Sentencing Commission "in promulgating general policy statements regarding the sentencing modification provisions in 18 U.S.C. § 3582(c)(1)(A) shall describe what should be considered extraordinary and compelling reasons for sentence reduction." A policy statement was issued and embodied in U.S.S.G. § 1B1.13.

The Sentencing Commission's policy statement, in turn, says that a court may reduce a term of imprisonment if "the defendant is not a danger to the safety of any other person or to the community" and "extraordinary and compelling reasons warrant such a reduction." United States Sentencing Guidelines ("USSG") § 1B1.13. The policy statement clarifies that such reasons exist when (1) "the defendant is suffering from a terminal illness" or (2) "the defendant is suffering from a serious physical or mental

condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG § 1B1.13 cmt. n.1.  The policy statement also directs a court to consider the factors set forth in 18 U.S.C. § 3553(a) in deciding whether compassionate release is appropriate and what form compassionate release should take.  USSC § 1B1.13 cmt. n.4.

While the Sentencing Commission did issue a policy statement regarding "Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A)," *United States v. Aruda,* No. 20-10245, 2021 WL 1307884 (9th Cir., Apr. 8, 2021) has since held the current version of § 1B1.13 refers only to motions filed by the BOP Director and does not reference motions filed by a defendant as now allowed under § 3582(c)(1)(A). Consequently, this Court may consider U.S.S.G. § 1B1.13 in exercising its discretion, but the policy statement is not binding.

In adopting this rationale, the Ninth adopted the reasoning of five other circuits. In *Aruda, Id.,* the Court specifically referenced the explanation of the Fourth Circuit:

> "[t]here is as of now no 'applicable' policy statement governing compassionate-release motions filed by defendants under the recently amended § 3582(c)(1)(A), and as a result, district courts are 'empowered…to consider *any* extraordinary and compelling reason for release that a defendant might raise. '" *United States v. McCoy,* 981 F3rd 271, 284 (4th Cir. 2020) (quoting *United States v. Brooker,* 976 F.3d 228, 230 (2nd Cir. 2020)."

Considering the foregoing, § 1B1.13 may inform this Court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but it is not binding.

Mr. Farrell's motion seeks a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018.  As amended, § 3582(c)(1)(A) permits an inmate, who satisfies certain statutorily mandated conditions, to file a motion with the sentencing court for "compassionate release."

///

### B. Exhaustion of Administrative Remedies

Prior to considering the merits of Mr. Farrell's motion, the Court must determine whether he has met the statutory exhaustion requirement for compassionate release. *See* 18 U.S.C. § 3582(c)(1)(A). On January 25, 2021, Mr. Farrell submitted a request for compassionate release to the warden of his facility. Dkt. 89, Ex. A. On February 4, 2021, the warden denied his request. Dkt. 89, Ex. B. Based on the evidence presented, the Court finds the statutorily required 30-day period has expired, and Mr. Farrell's motion is now properly before the Court.

### C. Extraordinary and Compelling Circumstances.

The Court must next determine if extraordinary and compelling circumstances warrant a reduction of Mr. Farrell's term of imprisonment. *See* 18 U.S.C. § 3582(c)(1)(A)(i).

To be eligible for this Court to exercise its discretion for a reduced sentence, Mr. Farrell bears the burden to show "extraordinary and compelling reasons" for compassionate release to be granted.

Mr. Farrell argues that FCI Sheridan's failure to treat his serious medical conditions constitutes an extraordinary and compelling circumstance for the Court to reduce his sentence and order his immediate release so that he can access medical treatment in the community. Dkt. 89. Specifically, he states that in March of 2020, he was hospitalized with an unidentified illness, with symptoms of shortness of breath, nausea, chills, light-headedness, diarrhea and an elevated heart rate. Dkt. 90, Ex. C. At that time, he received a test to determine if he had contracted COVID-19, but the test was negative. Mr. Farrell believes that test may have been improperly administered. Dkt. 89.

Mr. Farrell indicates that he has yet to recover from his March 2020 illness, and continues to experience symptoms of fatigue, shortness of breath, and an abnormal heartbeat. He states that in August of 2020, a physician found him to have a heart

murmur, fatigue and shortness of breath, prescribed medication for Mr. Farrell's heart and lungs, and referred him to a cardiologist for an evaluation, to include an echocardiogram. Dkt. 90, Ex. D.

Mr. Farrell states that as of the date of the filing of his motion for compassionate release, over eight months later, he has yet to see a cardiologist and has not undergone an echocardiogram. Dkt. 89, Ex. E and Dkt. 90, Ex. F. Mr. Farrell argues his ongoing symptoms which remain untreated by the Bureau of Prisons place him at significant risk of serious harm. He requests release so that he can seek medical care in the community. Dkt. 89.

The government opposes Mr. Farrell's motion, arguing that his medical records evidence that on March 11, 2020, upon reporting symptoms of shortness of breath, nausea, light-headedness, and chills, he was transferred to an outside doctor for evaluation, and returned to the jail the same day. Dkt. 94, Ex. A at 4. The following day he reported "feeling better," and that his symptoms "just feel like a common cold." *Id.* He denied shortness of breath and stated that his cough was coming from a throat irritation, as opposed to his lungs. *Id.* He was again seen the following day, at which point he denied "any symptoms including fever, cough, sore throat, or shortness of breath." *Id.* He tested negative that day for COVID-19. Dkt. 94, Ex. B at 43.

In July of 2020, Mr. Farrell's medical records reflect his complaints of shortness of breath, intermittent cough and occasional heart palpitations, which he claimed to have suffered since March of 2020. Dkt. 94, Ex. B at 17. He was examined by a paramedic and found to have a normal heartbeat and no evidence of respiratory distress. *Id.* at 18.

On August 10, 2020, Mr. Farrell was examined by a doctor. At that time, he reported that he suffered from heart palpitations, fatigue, and shortness of breath, indicating these symptoms had worsened over the previous three months. Dkt. 94, Ex. B. He was diagnosed with a heart murmur, prescribed medications for the heart murmur and his claimed shortness of breath and referred for an echocardiogram. Dkt. 94, Ex. B at 15-16.

The government concedes that to date Mr. Farrell appears to have not undergone the echocardiogram but indicates that the medical records reflect that on April 7, 2021, he was examined, his lungs were clear, and he was found not to suffer from any serious cardiopulmonary disease. Additionally, the records show that he is now fully vaccinated, having received both doses of Moderna's COVID-19 vaccine. Dkts. 92, 94.

The government argues that the Court should deny Mr. Farrell's motion for compassionate release as there is no evidence that Mr. Farrell currently suffers from any serious medical issues, or that his health is endangered, at least to the level of constituting extraordinary and compelling reasons to justify reducing his sentence. Finally, the government indicates that if Mr. Farrell believes he is not receiving adequate medical care, that the proper course of action is to pursue an administrative remedy within the Bureau of Prisons, which he has not done. Dkt. 92.

In reply, Mr. Farrell argues that the extent of Mr. Farrell's illness is unclear only because of the Bureau of Prisons' continued failure to take the necessary steps to make a diagnosis. Dkt. 99.

The Court agrees with Mr. Farrell, as his medical records document an extraordinary and compelling basis for reducing his sentence. In August 2020, it was a prison medical doctor who recommended that he see a cardiologist and undergo an echocardiogram. No evidence or medical record has been supplied by the government to demonstrate this order was followed. Nor has the government satisfactorily explained why the doctor's order was not followed with a consultation for Mr. Farrell with a heart specialist or an echocardiogram for ten months. These circumstances reflect that Mr. Farrell's health is endangered with a system that has ignored conditions that may present a danger to his health.

While the government argues that "it is not even clear that Farrell is ill" and that a recent x-ray showed no signs of cardiopulmonary disease, this is surmise. Mr. Farrell has submitted evidence of continued ill health, warranting treatment or at minimum

diagnosis.  Here, neither took place.  The fact that Mr. Farrell is fully vaccinated against COVID-19 does not justify ignoring other medical conditions affecting an inmate.

Mr. Farrell has supplemented his motion with evidence from an exceptionally well-qualified physician, Dr. Marc Stern, as evidenced by the curriculum vitae on file. Dr. Stern clarified that the government's dependence on a negative x-ray is not definitive of the actual condition of Mr. Farrell.  Specifically, that an x-ray only rules out certain cardiopulmonary diseases, but that not all cardiopulmonary diseases are visible on an x-ray.  Dkt. 99, Ex. A.  He also noted that an x-ray fails to rule out diseases other than those found in the cardiopulmonary system.  *Id.*

The unexplained delay or justification in following the prison's doctor's order for what may be a potentially serious cardiopulmonary or other organ system condition is unacceptable.  The medical evidence and opinions before the Court suggest that Mr. Farrell continues to suffer from his illness with reported fatigue, shortness of breath and abnormal heartbeat.  These conditions were confirmed nearly a year ago with the physician who referred Mr. Farrell to a cardiac specialist and also prescribed medication for Mr. Farrell's heart and lungs.  The Court thus concludes that under the unique facts of this case, the medical records and evidence, Mr. Farrell's motion for compassionate release shall be granted so that he may access appropriate medial care in the community that will hopefully address his needs more promptly than have been done to date.

**D.  Safety of Others**

The Court next turns to whether Mr. Farrell presents a danger to the safety of any other person or to the community.  As noted above, while not bound by U.S.S.G. §1B1.13, this Court exercises its discretion and will consider the 18 U.S.C. § 3553(a) factors in assessing whether a reduction in sentence is appropriate.

In exercising its discretion, the Court considers the nature and circumstances of the underlying offense, the weight of evidence against the defendant, his history and

characteristics, and the nature and seriousness of the danger his release would pose to any person or the community.

Mr. Farrell indicates that he is not a danger to any other person or the community as evidenced by his success on pretrial supervision for over a year without incident before self-surrendering to serve his sentence, his good disciplinary record throughout his term of confinement, his lack of criminal history other than his current conviction, and his lack of history of violence. He argues that his successful completion of the RDAP treatment program while incarcerated, together with his plan to live with his parents upon release, ensure that he will not pose a risk of danger to the community. Dkt. 89.

The government counters by pointing to the seriousness of Mr. Farrell's crime of conviction and notes that, contrary to Mr. Farrell's assertion he was successful on pretrial supervision, in fact approximately one month after sentencing he was found to have violated the conditions of release by stealing drugs from his family members and consuming alcohol, which resulted in the Court revoking his bond and remanding him to custody to begin serving his sentence. Dkt. 92.

The Court agrees with Mr. Farrell once again. The government's foundational argument of danger is predicated upon Mr. Farrell's violation of his pretrial release conditions by stealing drugs from his family and consuming drugs. Mr. Farrell has successfully completed the RDAP treatment program which is designed to address the exact offenses that caused revocation of his pretrial release, *i.e.,* drugs and alcohol. The Court thus finds that Mr. Farrell's release will not present a danger or safety concerns for any person or to the community. Mr. Farrell has no previous criminal history aside from this case, and there is no evidence he has ever engaged in any violent activity.

### E. Other 18 U.S.C. § 3553(a) Factors

In determining whether to grant Mr. Farrell's compassionate release under 18 U.S.C. § 3582(c)(1)(A), the Court also considers the relevant factors other than noted above as set forth under 18 U.S.C. § 3553(a). *See also United States v. Grimes*, No.

CR11-5509 BHS, 2021 WL 319404 (W.D. Wash. Jan. 26, 2021) (summarizing relevant factors).

Mr. Farrell argues that a reconsideration by the Court of the § 3553(a) factors weigh in favor of release.  He acknowledges that his crime was serious but indicates that having completed over 75% of his 96-month sentence, much of which while feeling ill, reflects the seriousness of his offense, and that the time he has already served will adequately deter others from committing similar crimes.  Most relevant, Mr. Farrell argues the goal of the § 3553(a) factor relating to the "need for the sentence imposed . . . to provide the defendant with . . . medical care . . . in the most effective manner" is not being fulfilled given Mr. Farrell's claim that FCI Sheridan has failed to provide him with the medical care he needs.  Dkt. 89.

The Court agrees with Mr. Farrell for the reasons articulated in this Order.  Mr. Farrell's term of imprisonment shall be reduced to time served and he shall be released 14 days from the date of this Order to accommodate a quarantine period with the Federal Bureau of Prisons.  If Mr. Farrell tests COVID-19 positive at any time during his quarantine period, the Bureau of Prisons will notify the government who will immediately notify the Court so this Order can be modified appropriately.

The Court is satisfied that the release plan for Mr. Farrell is for him to reside with his parents, Bob and Nancy Farrell, at their residence located at 2343 Jathom Lane, Longview, Washington 98632.  Because he has a stable release address and supportive family, no term of location monitoring or home confinement appears necessary.

No additional term of supervised release will be ordered.  Mr. Farrell shall serve the term of supervised release originally imposed at sentencing with the same standard and special conditions.

///
///
///
///

### III.  CONCLUSION

For the foregoing reasons, Defendant Brian Richard Farrell's motion for compassionate release is **GRANTED**.  The Court hereby **ORDERS** that Mr. Farrell's term of imprisonment be reduced to time served.  The Court **ORDERS** the Bureau of Prisons to release Mr. Farrell for placement according to the release plan approved by the United States Probation Office where he will be supervised.  Mr. Farrell is **ORDERED** to contact the United States Probation Office within 24 hours of his release and follow its instructions.

DATED this 14th day of June 2021.

*Richard A. Jones*
The Honorable Richard A. Jones
United States District Judge