The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>BRIAN RICHARD FARRELL,<br><br>Defendant. | NO. CR15-029RAJ<br><br>**GOVERNMENT'S RESPONSE TO MOTION FOR EARLY TERMINATION** |

Brian Farrell has served approximately one-year of supervised release after this Court granted his motion for compassionate release and ordered him released early from his term of imprisonment. Although Farrell has shown significant promise during his time on supervision, the Court should defer ruling on the motion for an additional six months, to give the Court a better record that Farrell has indeed firmly turned the corner and does not require any further supervision. If Farrell has incurred no violations, and otherwise is doing well, the Court should at that point terminate his supervision.

## BACKGROUND

The Silk Road was an online black market that offered various illegal items for sale, including drugs. The Silk Road operated on the "The Onion Router" (the "Tor") network, which is a special network of computers distributed around the world designed

Response to Early Termination – 1
*United States v. Farrell*, CR15-029RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, STE. 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

to conceal the true Internet Protocol ("IP") addresses of the users on the network. Tor also enables web sites to operate on the network in a manner that conceals the true IP address of the computer server hosting the website.

In October 2013, law enforcement arrested the head of the Silk Road, Ross Ulbricht, who operated under the name "Dread Pirate Roberts." The government also seized the Silk Road website. Later that year, in the wake of these developments, Silk Road 2.0 ("SR2") was launched. SR2, like the original Silk Road, contained a user-friendly interface with links to various categories of items for sale on the site, including drugs such as MDMA (Ecstasy), LSD, cannabis, hashish, methamphetamine, cocaine, and heroin. The site offered other contraband for sale, including stolen property and malicious software and computer equipment.

If a user clicked on any particular item for sale, the website would display the details of the listing, including a description of the item, the price, the username of the vendor selling the item, and prior customers' feedback on the vendor. To buy an item, the user would click a link labeled "add to cart." The user was then prompted to supply a shipping address and to confirm the placement of the order.

Users paid for items on SR2 using Bitcoin. Bitcoin is an anonymous, decentralized, peer-to-peer form of digital currency having no association with banks or governments. In order to pay for an item, a user would first obtain Bitcoin (typically from a Bitcoin exchanger) and then transfer them to the user's SR2 account. After completing the sale, the vendor's SR2 account would be credited the amount of the sale, and the user's account would be debited accordingly. The SR2 website would charge a commission on the sale, which at times ranged from four to eight percent. Vendors were allowed to anonymously transfer their Bitcoin proceeds from their SR2 accounts to accounts not associated with the site.

In July 2014, Seattle agents received a lead that a particular IP address had accessed the vendor portion of SR2. A user could not accidentally end up on the vendor portion of SR2. Rather, SR2 administrators/moderators restricted access to the vendor

Response to Early Termination – 2
*United States v. Farrell*, CR15-029RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, STE. 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

portion of the site to vendors who had conducted a certain amount of transactions. In addition, a separate username and password were required to access the vendor portion of SR2.

According to Comcast records, the IP address resolved to Farrell's address. On December 22, 2014, law enforcement contacted Farrell at the residence. Farrell said that he was familiar with Silk Road from the news, and said that he had visited the site within the last six months. Farrell said, "I deal with bitcoins," further stating that Silk Road was the "shady side of bitcoins." Farrell denied ever buying or selling drugs on the Silk Road, further stating that to the best of his knowledge no one living with him was involved in buying or selling drugs.

On January 2, 2015, agents, after receiving additional information from a cooperating witness that Farrell was involved in SR2, executed a search warrant at Farrell's Bellevue residence. During the course of the search, agents seized three handguns, various computer media, various prescription medications, drug paraphernalia, silver bullion bars valued at $3,900.00, and approximately $35,000 in U.S. currency.

On the day of the search, Farrell was interviewed after being provided *Miranda* warnings. Initially, Farrell maintained that he did not really know much about SR2. Agents then confronted Farrell with the fact that an IP address tied to the residence was tied to SR2. Farrell stated many people had come and gone from the house and there had been a lot of past users of the internet in the residence. Farrell stated he had registered with SR2 with a username to allow him to look around the site.

Agents asked Farrell whether he would help identify others involved in SR2. Farrell stated, "You're not going to find much of a bigger fish than me." He continued by saying, "My moniker on Silk Road was "DoctorClu." Agents asked Farrell what he did as "DoctorClu," and he said he was the support manager and worked as "Defcon's" right hand man. "Defcon," was the moniker used by Blake Benthall, the chief operator of SR2.

Response to Early Termination – 3
*United States v. Farrell*, CR15-029RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, STE. 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Farrell said that he had lead a "denial-of-service-attack" on the Tor Market, a competitor to SR2. He said that after the attack, at the end of 2013, he was offered a staff position on SR2. He said that he had been given a starting salary of about $750.00 per week that later climbed to about $1,750.00 per week. Farrell said he did not have complete access to SR2, but that he could change passwords on the site. He said he served mainly as "Defcon's" spokesman. Farrell said that other SR2 staff would obtain his permission to do things if they were unable to get a hold of "Defcon."

As reflected in the plea agreement's statement of facts, Farrell has admitted helping maintain SR2, including approving and suspending vendors, dealing with help tickets, providing technical support, serving as a forum moderator, and promoting staff members. He also has admitting serving as the informal spokesperson for "Defcon," the head of SR2. Finally, he admitted purchasing drugs on the site for personal use as well.

On June 3, 2016, the Court sentenced Farrell to 96 months of imprisonment and four years of supervised release. Farrell was allowed to self-report to custody. However, after sentencing, the Court remanded him to custody after Farrell was caught stealing drugs from his family.

On June 14, 2021, the Court granted Farrell's motion for compassionate release and ordered him released from custody. The Court faulted BOP's handling of Farrell's heart condition. The Court also found that Farrell's release would "not present a danger or safety concerns for any person or to the community," noting his lack of criminal history or association with any violence. Dkt. 100 at 8.

Farrell has now spent about a year on supervision. Senior Probation Officer Kalen Thomas reports:

> We have no objection to early termination.
>
> Farrell began supervision on June 28, 2021, serving just over 12 months. Provided 15 samples for drug testing, all negative. Latest test provided on January 25, 2022. We assessed him as a low risk to reoffend. Very low risk of future violence. No prior convictions. His supervision transferred to a low risk or administrative caseload in February 2022. He lived alone since Jan 2022. Had been living with very supportive parents. Employed full time with Coastal Software and Consulting, Inc in Vanc. Earning $25 an hour. We did not require his participation in drug treatment. He completed inpatient in 2015. It looks like he participated in some drug treatment in prison. Paid SPA. Incurred no violations. Routine records checks show no new arrests.

Response to Early Termination – 4
*United States v. Farrell*, CR15-029RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, STE. 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

# ARGUMENT

Farrell seemingly has done very well since being released about a year ago, and it seems that he is on a path to success. However, it has been only a year since he was released from custody, and the government believes that some additional time is needed to ensure that Farrell has turned the corner for good. The government suggests that the Court set a hearing six months out. If Farrell remains violation-free, and is otherwise doing well, the government would support early termination.

DATED: July 6, 2022

Respectfully submitted,

NICHOLAS W. BROWN
United States Attorney

*s/ Thomas Woods*
THOMAS WOODS
Assistant United States Attorney
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Telephone: (206) 553-7970

Response to Early Termination – 5
*United States v. Farrell*, CR15-029RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, STE. 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970